EL PUEBLO DE PUERTO RICO, apelado, *v.* JOSÉ ELÍAS MILLÁN MELÉNDEZ, acusado y apelante.

*Número:* CR-79-87 *Resuelto:* 30 de junio de 1980

*Luis A. Amorós,* abogado del apelante; *Héctor A. Colón Cruz, Procurador General,* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Contra el apelante se presentaron acusaciones por los delitos de asesinato en primer grado, robo y violación. El Ministerio Fiscal presentó prueba con el propósito de establecer que

el apelante, actuando conjuntamente con otros individuos, intervino con Ana Celia Luna Quiles en un caminito que cruza un solar yermo en el Residencial Público Vista Hermosa. Le quitó una sortija que llevaba puesta. Mediante la fuerza sostuvo relaciones sexuales con ella y luego le dio dos golpes en la frente con una piedra, causándole la muerte. La hija de la víctima, que la acompañaba, presenció estos hechos.

La defensa presentó prueba con el propósito de establecer que la condición física del apelante, debido a un accidente automovilístico anterior a los hechos imputados, hacía imposible su participación en la comisión del delito.

Celebrado el juicio ante jurado el apelante fue declarado culpable y condenado a la pena de reclusión perpetua por el delito de asesinato en primer grado y a una pena de 10 a 15 años de presidio por el delito de violación. El jurado lo absolvió en el caso de robo.

En su primer señalamiento de error sostiene el apelante que erró el tribunal de instancia al permitir que el Dr. Criado testificara sobre la causa de la muerte de la occisa. Alega el apelante que el protocolo de la autopsia preparado por el Dr. Vallejo no era admisible en evidencia y, por tanto, no podía el Dr. Criado basar su testimonio en el contenido del mismo. Argumenta el apelante que tanto el protocolo de la autopsia como el testimonio del Dr. Criado constituyen prueba de referencia inadmisible y que la admisión de dicha prueba sin la comparecencia personal del Dr. Vallejo viola su derecho a "carearse con los testigos de cargo", garantizado por la Constitución de Puerto Rico, Art. II, Sec. 11.

El Dr. Vallejo comenzó a trabajar en el Instituto de Medicina Legal en el año 1974. Ocupó la posición de patólogo forense hasta el mes de septiembre del año 1976. Como consecuencia directa de su empleo, el Dr. Vallejo hizo la autopsia y preparó el protocolo de autopsia relacionado con la muerte de Ana Celia Luna Quiles. Por disposición de ley dicho protocolo de autopsia fue incluido en el archivo que mantiene el

Instituto de Medicina Legal de todos los casos investigados. Ley para Establecer el Instituto de Medicina Legal de Puerto Rico, Núm. 206, de 15 de mayo de 1943, Sec. 16 (18 L.P.R.A. sec. 711).

El protocolo de autopsia fue ofrecido en evidencia por el Ministerio Fiscal y aceptado por el tribunal. El propósito de ofrecer el protocolo de autopsia fue probar la verdad de lo aseverado en dicho protocolo y, por tanto, constituye prueba de referencia. En *Negrón* v. *Corujo*, 67 D.P.R. 398, 401 (1947), expresamos: "Es regla elemental de derecho que declaraciones de referencia (*hearsay*) no son admisibles en evidencia. Pero las excepciones a esta regla son tan innumerables que de ordinario se ha dicho que las excepciones constituyen gran parte de la Ley de Evidencia en sí. La admisión de documentos, expedientes o récords públicos forma una de las excepciones. La razón para ello es que como de ordinario tales documentos o expedientes son preparados por personas que no tienen motivo alguno para suprimir o alterar la verdad o para fabricar evidencia, son además preparados en el desempeño de un deber público y casi siempre bajo la sanción de un juramento oficial, los mismos constituyen una bien establecida excepción a la regla que se opone a que se admita prueba de referencia. La evidencia así admitida es prueba prima facie de aquellos hechos que resultan relevantes o pertinentes a la cuestión en controversia [Citas omitidas.]".

El apelante argumenta que el protocolo de la autopsia presentado en evidencia no es un documento público porque la ley que ordena que se lleve un archivo en el Instituto de Medicina Legal, no establece que se conservará en el Instituto, debidamente protegido y resguardado contra inspección por personas no autorizadas. Ley Núm. 206, de 15 de mayo de 1943 (18 L.P.R.A. sec. 711).

El término "documento público" tiene varias acepciones. Ver Wigmore, *Evidence*, § 1630 (Chadbourn rev. 1974). En ocasiones lo hemos utilizado para referirnos a documentos

que están a la disposición de todos; que no son confidenciales. *Dávila* v. *Superintendente de Elecciones*, 82 D.P.R. 264, 276, 283 (1960). En otras ocasiones hemos utilizado ·el término "documentos públicos" para referirnos a los documentos oficiales preparados por funcionarios públicos en el desempeño de un deber público. *Cirino* v. *Fuentes Fluviales*, 91 D.P.R. 608, 614–616 (1964).

El Art. 1170 del Código Civil, 31 L.P.R.A. sec. 3271, establece que "[s]on documentos públicos los autorizados por un notario o empleado público competente, con las solemnidades requeridas por la ley". El Art. 49 de la Ley de Evidencia, (1) 32 L.P.R.A. sec. 1783, señalaba que "[l]os documentos públicos se dividen en cuatro clases: 1. Leyes[;] 2. Protocolos judiciales[;] 3. Otros documentos oficiales[;] 4. Archivos públicos de documentos públicos o privados, llevados en Puerto Rico".

■ Por estar comprendido el protocolo de autopsia en la clase de documentos públicos denominada "documentos oficiales", es admisible y constituye evidencia prima facie de los hechos consignados en él. *Atiles Moreau, Admor.* v. *McClurg*, 87 D.P.R. 865, 875 (1963); *Negrón* v. *Corujo*, supra.

■ El protocolo de la autopsia se presenta en evidencia para establecer el hecho de la muerte de la persona agredida. El protocolo admitido en evidencia informa que el cuerpo presentaba "boquetes a nivel de la frente y hematomas en la boca, otras heridas en la cara. Faltaban algunos huesos y otros sobresalían así como también la masa encefálica sobresalía".

La hija de la víctima declaró que, luego de ser ultrajada su madre, el apelante "cogió una piedra y le dio dos veces a mi mamá en la frente".

Aparte de lo que antes expresamos en relación con la confiabilidad de los datos consignados en el protocolo de la autop-

---

(1) El juicio en el presente caso se celebró antes de entrar en vigor las Reglas de Evidencia.

sia por ser un documento público, los mismos están corroborados por lo declarado por un testigo presencial.

Ciertamente no se justificaría revocar la sentencia en el presente caso, donde la prueba establece la culpabilidad del acusado, por el hecho de que no estaba disponible para declarar el autor de la autopsia, cuando ésta corrobora la prueba directa presentada en juicio. Además, existe la circunstancia de que el Dr. Criado, al declarar sobre los hallazgos que se hicieron constar en el protocolo de la autopsia, estuvo sujeto a contrainterrogatorio, reduciendo a un mínimo el perjuicio que podía teóricamente ocasionarse al acusado.

No se cometió el primer error señalado.

■ En su segundo señalamiento de error sostiene el apelante que la presentación de *acusaciones* por los delitos de asesinato en primer grado, robo y violación contravienen las disposiciones del Art. 63 del Código Penal, 33 L.P.R.A. sec. 3321.(²) El Art. 63 proscribe *la imposición de varios castigos* por la comisión de un acto u omisión penable de distintos modos por diferentes disposiciones penales. No prohíbe la acusación, procesamiento y convicción en un mismo juicio por varios delitos que surjan del mismo acto u omisión. Hasta que desfile la prueba no puede determinarse si es aplicable lo dispuesto en el mencionado artículo. *People* v. *Miller*, 558 P.2d 552–560 (Cal. 1977).

■ Si bien en *González* v. *Tribunal Superior*, 100 D.P.R. 136, 143 (1971), concluimos que "el concepto 'acto u omisión' a que se refiere el artículo no debe circunscribirse al sentido literal de la expresión, esto es, no necesariamente

---

(²) El Art. 63 del Código Penal, 33 L.P.R.A. sec. 3321, dispone:

"Salvo lo dispuesto en la sección siguiente, un acto u omisión penable de distintos modos por diferentes disposiciones penales, podrá *castigarse* con arreglo a cualquiera de dichas disposiciones pero en ningún caso bajo más de una.

"La absolución o convicción y sentencia bajo alguna de ellas impedirá todo procedimiento judicial por el mismo acto u omisión, bajo cualquiera de las demás." (Énfasis suplido.)

es el acto que denota una actuación específica sino que puede ser un curso de conducta con un objetivo y propósito determinado", no toda secuencia de actos cercanos en tiempo da margen a la aplicación del precepto estatutario. A ese efecto se expresa en *People* v. *Beamon*, 504 P.2d 905, 914 (Cal. 1973):

> . . . El punto de partida en cualquier aplicación del Artículo 654 es determinar el objetivo y la intención del acusado. Si éste perseguía varios objetivos criminales independientes entre sí y no meramente incidentales, podrá ser castigado por delitos independientes cometidos en la persecución de cada objetivo, aunque los delitos dependan de actos comunes o sean parte de un curso de conducta de otra forma indivisible.

Ver además *Pueblo* v. *Meléndez Cartagena*, 106 D.P.R. 338, 345 (1977); *People* v. *Miller*, supra.

Los hechos probados en el caso de autos evidencian varios actos o cursos de conducta. Los actos del apelante son fácilmente separables y cada uno tenía un objetivo y propósito determinado diferente. La mera cercanía cronológica de los mismos no tiene el efecto de fundirlos en uno solo para efectos del Art. 63 del Código Penal. No puede advertirse, parafraseando a *Pueblo* v. *Meléndez Cartagena*, en la pág. 348, un estrecho ligamen causal entre cada estadio, de suerte que el rango mayor deba absorber las sanciones correspondientes a los otros. El apelante atacó a la víctima para violarla y superó su resistencia mediante el uso de fuerza y violencia. La agresión causante de la muerte ocurrió luego de perpetrada la violación. Son dos actos distintos y separados a los cuales no les es aplicable lo dispuesto en el Art. 63.

En *Ex Parte Chapman*, 273 P.2d 817 (Cal. 1954), pág. 819, la Corte Suprema de California explica la aplicabilidad del Art. 654 a una situación similar a la que consideramos en este caso:

> En *People* v. *Logan* (1953), 41 Cal.2d 279, página 290, 260 P.2d 20, el récord revelaba que el acusado se le acercó por detrás a la víctima, la agredió con un bate de béisbol y le arrebató la cartera; este tribunal resolvió que como "el agredir a la víctima

con el bate de béisbol y el arrebatarle la cartera constituía una sola transacción indivisible", el "único acto de emplear la fuerza con el bate de béisbol no podía castigarse como agresión con un arma mortífera y además utilizarse por el Pueblo como la fuerza necesaria para constituir el delito de robo." En el caso de autos, sin embargo, el apelante perpetró el robo mientras portaba un arma mortífera con la cual amenazó a la víctima y obtuvo de ella una suma de dinero a través de tal intimidación; después de entregar el dinero, la víctima comenzó a correr, Larios [el coacusado] la detuvo y el apelante le dio con el arma. El . . . recurrido sostiene correctamente que en las circunstancias descritas, el detener a la víctima y darle con el arma constituía un delito separado de agresión con la intención de inferir grave daño corporal. Según argumenta el recurrido, para cometer el delito de robo en primer grado es necesario únicamente que el acusado esté armado con un arma mortífera y que se apropie ilegalmente de los bienes de otro sustrayéndolos de su persona en contra de su voluntad "por medio de la violencia o de la intimidación" [citas omitidas]; si después que el robo se logra, el perpetrador agrede a la víctima con el arma, éste es culpable de un delito separado de agresión por medio de fuerza capaz de producir grave daño corporal.

Ver además: *People* v. *Massie*, 428 P.2d 869 (Cal. 1967); *People* v. *Williamson*, 153 Cal. Rptr. 48–53 (4th Dist. 1st Div. 1979).

No se cometió el segundo error señalado.

En su tercer señalamiento de error sostiene el apelante que el testimonio de la testigo Luz Minerva Guadalupe era inadmisible. A la fecha del juicio los requisitos para ser testigo los establecían los Arts. 400 y 401 de la Ley de Evidencia, 32 L.P.R.A. secs. 1732 y 1733. (3)

---

(3) § *1732. Requisitos para ser testigo*

"Todas las personas, sin excepción fuera de lo especificado en las dos secciones siguientes, que hallándose en posesión de sus sentidos, pueden percibir y, percibiendo, comunicar sus percepciones a otras personas, son aptas para testigos. Así, pues, ninguna de las partes, ni otras personas, interesadas en el resultado de la acción o procedimiento, serán excluidas; ni las que hubieren sido convictas de delito grave; como tampoco se excluirá a persona alguna por razón de sus opiniones en lo referente a creen-

El Art. 400 establece como regla general que son aptas para ser testigos todas las personas que, hallándose en posesión de sus sentidos, puedan percibir y, percibiendo, comunicar sus percepciones a otras personas. El Art. 401 establece que no podrán ser testigos las personas que no estuvieren en su juicio cabal al presentarse a examen y los menores de 10 años que parecieren incapaces de recibir impresiones exactas de los hechos respecto de los cuales fueren examinados ni relatarlos con exactitud.

En el caso de autos la testigo era mayor de 10 años y estaba en su juicio cabal. Argumenta el apelante que la declaración de la testigo está llena de absurdos, contradicciones, inconsistencias y contestaciones que afectan su veracidad.

 El Ministerio Fiscal llamó a Luz Minerva Guadalupe como su primer testigo. La defensa no formuló objeción alguna y su testimonio fue admitido en evidencia. Después de finalizar el fiscal su primer informe, presentó la defensa su objeción. Como regla general, toda prueba ofrecida en evidencia que no sea objetada oportunamente es admisible. *Pueblo* v. *Oquendo*, 83 D.P.R. 234, 241 (1961). Al tribunal de instancia corresponde determinar si una prueba es admisible como cuestión de derecho. Ver *Pueblo* v. *Claudio*, 93 D.P.R. 133, 138 (1966). En el caso de autos, actuó correctamente el tribunal de instancia al admitir el testimonio de Luz Minerva Guadalupe.

 El planteamiento del apelante representa un ataque a la credibilidad del testimonio de Luz Minerva Guadalupe, cuestión que se sometió correctamente al jurado para su dilu-

---

cias religiosas; si bien en cada caso, la credibilidad de los testigos podrá ponerse en duda, conforme lo dispuesto en la sec. 1664 de este título."
"§ *1733. Personas que no podrán ser testigos*
"No podrán ser testigos las siguientes personas:
"1. Las que no estuvieren en su juicio cabal al presentarse a examen.
"2. Los niños menores de diez años que parecieren incapaces de recibir impresiones exactas de los hechos respecto de los cuales fueren examinados ni relatarlos con exactitud."

cidación. *Pueblo* v. *Alvarez*, 105 D.P.R. 475, 478 (1976). En ausencia de pasión, prejuicio o error manifiesto no intervendremos con su apreciación de la prueba. *Pueblo* v. *Cruz Negrón*, 104 D.P.R. 881, 882 (1976).

En su cuarto señalamiento de error sostiene el apelante que la exoneración de su alegado cómplice en el Tribunal Tutelar de Menores es base suficiente para la aplicación de la doctrina de impedimento colateral y, por consiguiente, su absolución en el caso de autos. No tiene razón.

En *Pueblo* v. *Ortiz Marrero*, 106 D.P.R. 140, 143 (1977), expusimos lo siguiente relativo a la doctrina de impedimento colateral:

> El ordenamiento penal vigente reconoce en nuestra jurisdicción la doctrina de impedimento colateral por sentencia. En síntesis, la misma recoge la norma de que una sentencia resulta concluyente entre las mismas partes si versa y conlleva la relitigación en un caso posterior de las cuestiones de hechos esenciales, adjudicadas y determinadas previamente en tal sentencia; *Pueblo* v. *Pagán Pagán*, 100 D.P.R. 532 (1972); *Pueblo* v. *Landmark*, 100 D.P.R. 73 (1971). Se acepta que ello impide la ventilación de un segundo proceso y es motivo de desestimación, aun cuando se trate de un delito distinto, si dentro de la adjudicación del caso anterior, *clara y directamente, se dilucidaron y resolvieron hechos necesariamente decisivos para el segundo. Pueblo* v. *Lugo*, 64 D.P.R. 554, 559–560 (1945). (Énfasis suplido.)

Sin entrar a considerar si las decisiones del Tribunal Tutelar de Menores son base suficiente para la aplicación de la doctrina de impedimento colateral, en el caso de autos es suficiente señalar que en el Tribunal Tutelar de Menores no se dilucidaron ni resolvieron, clara y directamente, hechos necesariamente decisivos en el caso de autos. En el referido procedimiento se concluyó únicamente, según surge de los documentos presentados por el apelante, que el menor no estaba vinculado a la comisión de los hechos.

En su quinto señalamiento de error sostiene el apelante que era inadmisible en evidencia el informe de toxico-

logía preparado en el Laboratorio del Instituto de Medicina Legal, por no haber declarado el Dr. Vallejo sobre las muestras que entregó al laboratorio para la preparación del referido informe. El químico del Instituto de Medicina Legal testificó que recibió de manos del Dr. Vallejo dos muestras marcadas 1575-ML-76 y 1575-Ml-76, números correspondientes a la autopsia de la occisa Ana Celia Luna Quiles. El Ministerio Fiscal no estableció la cadena de prueba mediante el testimonio de cada persona que intervino con las muestras. No lo hizo, porque el Dr. Vallejo no estaba disponible. Pero el testimonio del Dr. Vallejo no era indispensable y la cadena de prueba quedó establecida por el confiable sistema de identificación utilizado regularmente en el Instituto de Medicina Legal. *Cf. Pueblo* v. *Villalongo Torres*, 102 D.P.R. 574, 580 (1974).

■ En su sexto señalamiento de error sostiene el apelante que, siendo inconsistentes los veredictos rendidos por el jurado, procede revocar la sentencia dictada por el tribunal de instancia. Fundamenta su argumento en las expresiones hechas por este Tribunal en *Pueblo* v. *Landmark*, 100 D.P.R. 73 (1971). No tiene razón el apelante. El jurado en el caso de autos podía concluir que el apelante no era culpable del delito de robo, sin hacer necesariamente una determinación de hecho incompatible con la culpabilidad del apelante por los delitos de violación y asesinato en primer grado. Ver *Pueblo* v. *Figueroa Castro*, 102 D.P.R. 279, 288 (1974); *Pueblo* v. *Cruz Negrón*, 104 D.P.R. 881, 884 (1976).

En su séptimo señalamiento de error sostiene el apelante que el tribunal de instancia dio al jurado unas instrucciones deficientes e incompletas respecto a la defensa de coartada.

■ El apelante no avisó al tribunal de instancia con notificación al fiscal su intención de establecer la defensa de coartada. Regla 74 de las de Procedimiento Criminal. Por tanto, el Ministerio Fiscal podía objetar la presentación de evidencia sobre una posible coartada y el tribunal de instancia

no venía obligado a dar instrucciones al jurado sobre la misma.

■ "La defensa de coartada consiste esencialmente en la alegación del hecho de que el acusado no se encontraba en el lugar del crimen en la fecha y hora que se supone se cometió." *Pueblo* v. *Tribunal Superior*, 101 D.P.R. 133, 138 (1973). La defensa presentó como su único testigo a Delia Iris Meléndez Sierra, madre del apelante. En relación con una posible coartada ésta declaró que vivía en el Caserío Vista Hermosa. Que el día 20 de mayo de 1976 su hijo, el apelante, se acostó a dormir aproximadamente a las ocho de la noche. Ella se acostó a dormir a las doce de la noche y su hijo aún dormía. El día 21 de mayo de 1976 la Policía fue a buscar al apelante como a las seis y media de la mañana. Los hechos ocurrieron cerca de su casa.

El testimonio de la madre del apelante no es incompatible con la presencia del acusado en el lugar del crimen en la fecha y hora que se supone se cometió. A las dos de la mañana del día 21 de mayo de 1976, la testigo estaba dormida y no tiene conocimiento personal sobre las actividades del apelante. En vista de la cercanía entre el lugar de los hechos y la casa de la testigo, se requiere mayor precisión en cuanto a la hora para concluir que se ha presentado prueba sobre una coartada.

Aun si consideramos el testimonio de la madre del apelante como prueba de coartada no objetada por el Ministerio Fiscal, la misma fue tan débil que el error del tribunal de instancia al no instruir al jurado sobre la defensa de coartada en nada perjudicó al apelante.

*En vista de lo anterior, se confirman las sentencias apeladas.*

El Juez Asociado Señor Díaz Cruz concurre en la opinión, excepto en los fundamentos de decisión del segundo señalamiento de error sobre concurso de delitos, que considera contrarios a *Simpson* v. *United States*, 435 U.S. 6 (1978) y

*Blockburger* v. *United States*, 284 U.S. 299 (1932), asunto sobre el cual no hay criterio mayoritario de este Tribunal. Véase *Pueblo* v. *Báez Cartagena*, 108 D.P.R. 381 (1979).