EL PUEBLO DE PUERTO RICO en interés del menor E.L.G.

Número: CE-87-310    Resuelto: 4 de diciembre de 1989

*Ramón E. Febus Bernardini*, abogado del peticionario; *Norma Cotti Cruz, Subprocuradora General*, y *Josefa A. Román García, Procuradora General Auxiliar*, abogadas de El Pueblo.

## SENTENCIA

Mediante un escrito titulado erróneamente "apelación", acude ante nos el menor de epígrafe a cuestionar la aplicación de las nuevas Reglas de Procedimiento para Asuntos de Menores, la participación del Procurador de Menores en el caso y la denegatoria a una solicitud de desestimación por haberse violado su derecho a un juicio rápido. Acogemos el recurso como un *certiorari* y, ya que tenemos el beneficio de la comparecencia del Procurador General, procedemos a resolverlo sin ulteriores procedimientos.

Procede la revocación de la resolución recurrida por entender que se violó el derecho del menor apelante a un juicio rápido al no existir justa causa para la posposición de la vista adjudicativa.

I

De los autos se desprende que al menor apelante se le imputa que el 4 de enero de 1987, a eso de las 9:00 P.M., participó en un asalto del garaje de gasolina Shell ubicado en la calle Carbonell de Cabo Rojo. También lo acusan de asesinar a quemarropa al empleado del establecimiento.

El 4 de enero, en horas de la madrugada, el menor E.L.G. fue llevado ante un juez municipal quien determinó causa probable y ordenó la presentación de las querellas por asesinato en primer grado e infracciones a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418, y su detención en el Hogar Juvenil de Ponce. La vista sobre orden de detención se celebró el 27 de enero de 1987, y el abogado del menor apelante hizo constar que no reconocía la participación de los Procuradores de Menores. También pidió que se enviara al menor al Hogar Crea de Isabela, donde podía recibir tratamiento. Así se hizo y allí se encuentra recluido el menor hasta hoy.

Se señaló vista adjudicativa para el 3 de febrero de 1987. Ésta fue suspendida porque el Procurador de Menores no había conseguido el protocolo de la autopsia realizada al empleado del garaje. Alegó que debido a la cantidad de autopsias que estaba realizando el Instituto de Medicina Forense por el incendio del Hotel Dupont Plaza había sido imposible conseguir el protocolo correspondiente y citar a la doctora que lo realizó.

Se señaló la vista para el 5 de marzo de 1987 y se suspendió nuevamente para el 9 de abril a petición del Procurador de Menores por la misma razón aducida en la suspensión anterior. El abogado de defensa en cada una de las suspensiones estableció que estaba listo para ver el caso y que se estaba violentando el derecho a juicio rápido que tenía su cliente debido a que la razón aducida por el Procurador de Menores no era justa causa para la suspensión.

El 17 de marzo el abogado del menor apelante presentó una moción de desestimación al amparo de la Regla 64(n) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, donde alegó que se había violado el derecho a juicio rápido del apelante. Luego de evaluar la comparecencia del Procurador de Menores, el juez de instancia la declaró sin lugar. Oportuna-

mente el menor apelante solicitó la reconsideración del dictamen. Ésta fue declarada sin lugar.

El 22 de abril el juez de instancia decidió paralizar los procedimientos y ordenó a la representación legal del menor que instara un recurso para que fuese este Tribunal quien resolviera la controversia. El 7 de mayo el menor apelante presentó el recurso que hoy resolvemos.(1)

## II

Como primer señalamiento de error(2) el menor apelante nos plantea que se violentó su derecho a juicio rápido porque no se señaló la vista adjudicativa dentro del término de sesenta (60) días contados desde la determinación de causa y detención si está bajo la custodia de sus padres y treinta (30) días si está en un centro de detención.

En fecha tan reciente como el 17 de marzo de 1989, *Pueblo en interés menor R.G.G.*, 123 D.P.R. 443 (1989), resolvimos que la actual Ley de Menores de Puerto Rico, en su Art. 22 (34 L.P.R.A. sec. 2222) ha incorporado al procedimiento de menores el concepto de juicio rápido contenido en la Regla 64(n) de Procedimiento Criminal, *supra*. "[N]o existe razón válida en derecho para que se le niegue a los

---

(1) Posteriormente, el 14 de septiembre de 1987, el menor apelante presentó ante este Tribunal un recurso de hábeas corpus donde alegaba que llevaba más de seis (6) meses en detención preventiva. Éste fue declarado sin lugar.

(2) Aunque el menor apelante también nos plantea que no aplican las Reglas de Procedimiento para Asuntos de Menores y que no procedía la participación del Procurador de Menores, en buena técnica dispositiva no tenemos que entrar a resolver los méritos de los señalamientos.

Sin embargo, es necesario aclarar que aun cuando existe una prohibición sobre leyes *ex post facto* en nuestra Constitución, hemos interpretado que se trata de leyes que perjudican los derechos del acusado o que tipifican una conducta que anteriormente no era delito. Las leyes procesales o aquellas que benefician a un acusado pueden aplicarse retroactivamente. Véase D. Nevares-Muñiz, *Derecho Penal Puertorriqueño*, San Juan, Instituto para el Desarrollo del Derecho, 1983, pág. 81 y ss. En este caso las Reglas de Procedimiento para Asuntos de Menores proveen más garantías constitucionales que el anterior ordenamiento.

menores de edad que son encausados bajo la Ley de Menores de 1986, ante, conforme los requisitos de debido procedimiento de ley y trato justo, el reconocimiento del derecho a juicio rápido." (Énfasis suprimido.) *Pueblo en interés menor R.G.G.*, supra, pág. 463. De hecho, las nuevas Reglas de Procedimiento para Asuntos de Menores, 34 L.P.R.A. Ap. I-A, R 6.2(2)(e), proveen la desestimación de la querella por el incumplimiento de los términos establecidos.

Al incorporar la doctrina de juicio rápido al procedimiento bajo la Ley de Menores de Puerto Rico, adoptamos también toda la interpretación que se ha hecho sobre ese derecho, incluso sus excepciones sobre justa causa para las suspensiones.

Nuestra jurisprudencia sobre el derecho a juicio rápido ha establecido que lo que constituye justa causa para la posposición de una vista habrá que determinarlo caso a caso. "[E]l derecho a juicio rápido es tan beneficioso a unos como a otros y es un derecho que en consecuencia asiste tanto al individuo como a la sociedad. El equilibrio a establecerse es en consecuencia entre intereses del mismo rango, pues cuando se socava el derecho individual al juicio rápido se atenta a la vez contra los propios intereses comunales." *Pueblo v. Arcelay Galán*, 102 D.P.R. 409, 417–418 (1974).

Aunque la ausencia de un testigo de cargo esencial constituye justa causa para suspender un señalamiento, *Pennington v. Corte*, 60 D.P.R. 260 (1942), es el Ministerio Público el que viene obligado a demostrar que existe justa causa para la suspensión. *Pueblo v. Herrera*, 67 D.P.R. 25 (1947); *Pueblo v. Arcelay Galán*, supra. De lo contrario se viola al acusado su derecho a juicio rápido, especialmente cuando el acusado ha protegido su derecho reclamándolo afirmativamente a través de su abogado. *Pueblo v. Santi Ortiz*, 106 D.P.R. 67 (1977); *Pueblo en interés menor R.G.G.*, supra.

En el caso de autos la representación legal del menor apelante afirmó en todo momento que estaba preparado para

ver el caso y que se le estaba violando su derecho a juicio rápido al no señalarse la vista de hechos dentro del término establecido por ley. El Ministerio Fiscal no presentó suficientes razones para explicar la importancia del protocolo de autopsia en el proceso del juicio y para justificar el que no se hubiese citado antes a la patóloga forense. Tampoco el tribunal de instancia tomó las precauciones necesarias para proteger los derechos constitucionales del acusado. Ante estos hechos es forzoso concluir que al menor apelante se le violó su derecho constitucional a un juicio rápido y, por lo tanto, las querellas deben ser desestimadas. No obstante, esto no constituye impedimento a que vuelvan a ser presentadas, dada la imprescriptibilidad del delito de asesinato.

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López concurre con el resultado sin opinión escrita. El Juez Asociado Señor Negrón García emitió opinión disidente, a la cual se une el Juez Asociado Señor Ortiz.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

—O—

Opinión disidente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Ortiz.

En su función adjudicadora, el jurista "[d]eberá ante todo tener fe y munirse [sic] de prudencia. *Deberá interrogar a la realidad una y otra vez; pensarla en términos concretos, ilustrarse, y por fin actuar.* Recordará que el argumento de la *razonabilidad* será siempre superior a cualquier fórmula que intente apartarse de él (por más estrictamente apegada a la letra de la ley positiva que sea). Tendrá presente que el llamado 'mundo jurídico' *no está divorciado del real,* sino que es parte integrante e inseparable (en sentido ontológico) de éste". J.E. Leonetti, *El llamado "mundo jurídico" y la*

*realidad*, 1984-A Rev. Jur. Arg. La Ley 363 (1984). Discrepamos de la sentencia del Tribunal que aprisiona el derecho a juicio rápido a una cronología de tiesa aritmética improrrogable y se aparta de la realidad fáctica y procesal.

## I

Contra el menor E.L.G. penden querellas por asesinato en primer grado e infracciones a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418, y al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404 (marihuana). Los hechos imputados ocurrieron el 4 de enero de 1987, ocasión en que dos (2) adultos, otro menor y E.L.G. alegadamente perpetraron un robo en una estación de gasolina. El empleado de ésta, Radamés Santana Toro, murió de un disparo. Las querellas fueron juradas el 6 de enero y en esa fecha se ordenó su ingreso a una institución de menores en Ponce.

El 21 de enero el menor querellado, por medio de su abogado, presentó al tribunal un total de seis (6) mociones mediante las cuales cuestionaba la legalidad de su detención y solicitaba juicio por jurado, supresión de evidencia y evaluación inmediata por un psicólogo. El 28 de enero, a tenor con la Regla 95 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, pidió determinada información y documentos. El 29 de enero el Procurador de Menores contestó las mociones e informó al tribunal que el menor "asistido [de] su madre, libre y voluntariamente confesó y firmó una declaración a esos efectos [y] . . . se comprometió y así acordó con la Fiscalía de Mayag[ü]ez, a servir de testigo para el procesamiento de los demás participantes [otro menor y dos adultos] y, de hecho, ya cooperó en la vista de determinación de causa contra el otro menor". *Exhibit* IV, pág. 1.

Para el 2 de febrero se unió a los autos el Informe Inicial Narrativo del Trabajador Social. Señalada la vista adjudicativa para el otro día —3 de febrero— compareció al tribunal

con sus padres y su abogado. En esa ocasión se dejó al menor bajo la custodia de sus progenitores, pero en el Hogar de Adolescentes CREA de Isabela, "ya que se temía por su seguridad y presentaba un problema de adicción". A solicitud del Procurador de Menores se suspendió la vista por no tener disponible el protocolo de autopsia (y el nombre de la patóloga que lo realizó) debido a la "cantidad de autopsias que estaba realizando el Instituto de Medicina Forense por el incendio del Hotel Dupont Plaza" acaecido el 31 de diciembre de 1986, esto es, cuatro (4) días antes del asesinato. Pospuesta para el 5 de marzo, por el mismo fundamento, fue suspendida para el 9 de abril. Esta última fecha fue aceptada por la defensa, ante la alternativa de que se fijara para el 2 de abril. Las dos (2) suspensiones decretadas estuvieron fundamentadas, a juicio del tribunal de instancia, en que la indisponibilidad del protocolo de autopsia y de la patóloga —por razón del siniestro del Hotel Dupont Plaza, por el cual murieron más de cien (100) personas— constituían justa causa.

Inconforme, el menor E.L.G. apeló de ese dictamen. En síntesis, argumenta que se le violó el derecho a juicio rápido.

## II

Nuestra decisión en *Pueblo en interés menor R.G.G.*, 123 D.P.R. 443 (1989) —en que resolvimos que el principio de juicio rápido se aplica a los procedimientos de menores— no es incompatible ni excluye el concepto de justa causa para decretar válidamente suspensiones sin infringir el derecho a juicio rápido. Art. 22 de la Ley Núm. 88 de 9 de julio de 1986 (34 L.P.R.A. sec. 2222); Regla 7.1 de Procedimiento para Asuntos de Menores, 34 L.P.R.A. Ap. I-A.

Las circunstancias en autos reflejan la existencia de justa causa debido a un evento extraordinario. Los hechos alegadamente ocurrieron el 4 de enero de 1987, esto es, cuatro (4) días después de la tragedia del Hotel Dupont Plaza. To-

mamos conocimiento judicial de las innumerables muertes habidas en ese siniestro y, como consecuencia, del aumento inusitado de autopsias, informes, etc. en el Instituto de Medicina Forense, y su consabido atraso. *Como cuestión de realidad, no se ha cuestionado la legitimidad de ese reclamo del Procurador de Menores y que ello impidió el pronto envío y recibo del protocolo de autopsia.* Ciertamente esa razón era más que suficiente para que la vista adjudicativa señalada para el 3 de febrero fuera suspendida para el 5 de marzo de 1987. Ese día el Procurador de Menores reprodujo el mismo planteamiento en el tribunal. Igual dictamen prevaleció. Esa realidad tampoco se puso en entredicho en ese momento. *Ni siquiera se ha sugerido conducta dilatoria intencional del Procurador de Menores.*

Ante este trasfondo procesal y fáctico, rechazamos la conclusión mayoritaria en que descansa la Sentencia, pág. 823, esto es, que no se explicó "la importancia del protocolo de autopsia en el proceso del juicio . . .". La necesidad de ese documento y la presencia del patólogo forense para probar el *corpus delicti* —salvo estipulación al efecto— es tan evidente que no precisa mucha elaboración. *Pueblo v. Márquez,* 67 D.P.R. 326, 333–334 (1947). En casos de asesinato, forma parte de la evidencia elemental a presentarse para probar la causa productora de la muerte violenta de un ser humano. *Pueblo v. Millán Meléndez,* 110 D.P.R. 171 (1980).

En resumen, la razón para las dos (2) primeras suspensiones fue válida en derecho. Si computamos el término de treinta (30) días desde la segunda suspensión, esto es, el 5 de marzo, notamos que hasta el 9 de abril sólo transcurrieron cinco (5) días en exceso. Si hacemos igual cómputo hasta el 2 de abril —fecha anterior alterna que la defensa no aceptó— advertimos que el señalamiento no excedió los treinta (30) días.

*La aplicación mecánica y matemática de los términos de las reglas, sin tomar en cuenta los trámites y las circunstancias, es una injusticia. Rechazamos esa metodología decisoria judicial que considera irrazonable la breve tardanza habida, que en último análisis es atribuible al propio peticionario.*