EL PUEBLO DE PUERTO RICO, apelado, *v.* JUAN ROSARIO REYES, apelante.

*Número:* CR-93-96          *Resuelto:* 7 de junio de 1995

*Luis Rafael Rivera*, abogado del acusado y apelante; *Pedro A. Delgado Hernández, Procurador General*, y *Eunice Amaro Garay, Procuradora General Auxiliar.*

PER CURIAM: Comparece ante nos Juan Rosario Reyes y solicita la revocación de una sentencia dictada por el Tribunal de Primera Instancia, Sala de Bayamón (Hon. Rodolfo Cruz Contreras, Juez Superior), que, mediante veredicto de jurado, lo declaró culpable de infringir el Art. 401 de la Ley de Sustancias Controladas de Puerto Rico[1] y lo sentenció a cumplir una condena de doce (12) años de

---

[1] 24 L.P.R.A. sec. 2401.

cárcel. Por considerar que los errores que se señalan en el recurso no fueron cometidos, confirmamos.

## I

Según se desprende de la Exposición Narrativa de la Prueba, para septiembre de 1990, al agente encubierto Juan Berríos Silva, de la División de Drogas y Narcóticos de la Policía de Puerto Rico, se le asignó investigar el Municipio de Cataño, en específico el negocio Los Molinos, localizado en el barrio Sabana. Para familiarizarse con el área y para que las personas que frecuentaban el lugar fueran adquiriendo confianza en él, Berríos comenzó a pasearse por el negocio y a saludar a sus patrocinadores sin bajarse de su automóvil.

El 28 de septiembre de 1990 Berríos se presentó al lugar de los hechos en horas de la tarde, se bajó del auto y entró por primera vez al negocio Los Molinos. Le pidió algo de tomar al que atendía el bar y luego se dirigió hacia el apelante, que estaba afuera contando un dinero. Nunca antes lo había visto en dicho lugar. Sin embargo, Berríos le preguntó si había "perico" por allí, ya que había ido a "Canales" y no había podido "capear".(²) Rosario le indicó que tenía un "perico" que era mejor que el de "Canales", por lo que Berríos le pidió que le consiguiera un "dos veinte".(³) El apelante procedió a recoger un "muerto"(⁴) del piso, sacó dos (2) bolsas plásticas transparentes y se las entregó a Berríos. Éste, por su parte, sacó cuarenta dólares ($40) de su bolsillo y se los entregó a Rosario. Luego de realizar la transacción, que duró alrededor de cinco (5) minutos, Rosario le expresó que cuando necesitara "material" se lo procurara. A las 7:15 de la noche del mismo día, Berríos le

---

(²) Término comúnmente utilizado para referirse a la compra de drogas.

(³) Ello equivale a dos (2) bolsas de cocaína de veinte (20) dólares cada una.

(⁴) Un muerto es una bolsa de estraza dentro de la cual se guarda la droga.

hizo entrega de la droga al Sr. Edgardo Nieves, su agente de contacto.

En su Informe sobre Violación de Ley Berríos describió al apelante como un joven de entre veinte (20) a veintidós (22) años, con una estatura de entre cinco (5) pies, siete (7) pulgadas y cinco (5) pies, ocho (8) pulgadas, vestido con un pantalón corto azul, una camiseta blanca sin mangas, "tennis" y medias blancas. Añadió que el apelante lucía un tatuaje en el brazo y tenía una pantalla en la oreja izquierda.

Oportunamente, el Ministerio Público presentó una denuncia contra el apelante para imputarle una violación al Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, 42 L.P.R.A. sec. 2401. En la vista preliminar se determinó causa probable por el delito imputado. Comenzado el juicio, el apelante alegó, como defensa, que el día de los hechos había trabajado como estibador suplente de Las Navieras de Puerto Rico en el barco *Mercadian Importer* desde las 11:00 A.M. hasta las 9:00 P.M. y que en ningún momento había salido del barco. Adujo, además, que el agente Berríos lo había confundido con un muchacho llamado "Quini", muy parecido a él, que desapareció poco después de la redada. La prueba de la defensa, que consistía en el testimonio de cinco (5) compañeros de trabajo, tendió a demostrar que ese día el apelante había trabajado ininterrumpidamente en dicho barco.

Por su parte, el Ministerio Público trajo prueba de refutación de coartada que consistía en el testimonio del gerente general y el director de seguridad de las Navieras, quienes indicaron tener conocimiento sobre el hecho de que algunos estibadores, luego de recibir sus "chapas" de identificación,[5] se las pasan a algún compañero, llamado "amuleto", quien realiza sus labores a cambio de alguna remuneración.

---

[5] El sistema de "chapas" se utiliza para mantener un control sobre los obreros durante horas de trabajo. Antes de comenzar sus labores, los estibadores recogen sus "chapas" y se dirigen hacia el área de trabajo. Al terminar el día, éstos devuelven su "chapa" y obtienen un cheque por las labores rendidas.

Luego de escuchar los testimonios del agente encubierto · Juan Berríos, del agente de contacto Edgardo Nieves y del químico José Luis Borrero Malavé, así como la prueba de coartada y de refutación de coartada, el Jurado rindió veredicto de culpabilidad y el tribunal de instancia declaró a Rosario culpable de violar el Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, *supra.*

El apelante recurrió a este Foro y adujo que el tribunal de instancia erró al permitir que el Ministerio Fiscal trajera prueba de refutación de coartada sin notificar a la defensa acerca de su intención de utilizarla; al permitir que se impugnara la credibilidad de los testigos de coartada mediante testimonios que meramente indicaron que los hechos podrían haber ocurrido de otra forma, y al rendir un veredicto de culpabilidad cuando la prueba no establecía su culpabilidad más allá de duda razonable. Por las razones que exponemos a continuación, entendemos que los errores no fueron cometidos.

## II

En primer lugar, el apelante alega que el foro de instancia erró al permitir que el Ministerio Público trajera prueba de refutación de coartada sin haber notificado a la defensa con antelación. Por su parte, el Procurador General aduce que como la defensa no le solicitó tal información, el Ministerio Fiscal no tenía la obligación de suplirle ésta. Coincidimos con el Procurador General con respecto a que el Ministerio Público no tenía que suplirle dicha información a la defensa motu proprio.

La Regla 74 de Procedimiento Criminal dispone, en lo pertinente, lo siguiente:

El acusado que desee establecer la defensa de coartada deberá suministrar al Ministerio Público, si éste así lo solicita, la siguiente información:

(a) Sitio en que se encontraba el acusado a la fecha y hora de la comisión del delito.

(b) Desde qué hora se encontraba el acusado en ese sitio.

(c) Hasta qué hora estuvo el acusado en ese sitio.

(d) Informar qué documentos, escritos, fotografías o papeles se propone utilizar el acusado para establecer su defensa de coartada, informando en poder de quién se encuentran.

El Ministerio Público tendrá la obligación recíproca de informar al acusado si éste así lo solicita el nombre y dirección de los testigos que se propone utilizar para refutar la defensa de coartada o incapacidad mental. 34 L.P.R.A. Ap.II.

En cuanto a la obligación recíproca de informar, en *Pueblo v. Tribunal Superior*, 101 D.P.R. 133 (1973), dispusimos que ésta es esencial para preservar el "balance que garantiza [el cumplimiento con] las exigencias del debido procedimiento de ley y del juicio justo". Íd., pág. 138. Sin embargo, en *Pueblo v. Acosta Acosta*, 107 D.P.R. 68 (1978), aclaramos que dicha obligación sólo surge una vez el acusado reclame su derecho a obtener información relativa a la prueba de refutación de coartada. Íd., pág. 70. Véase, además, E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1993, Vol. III, Sec. 27.7, págs. 308–309.

Hoy reiteramos lo dispuesto en *Pueblo v. Acosta Acosta*, supra, convencidos de que ello en nada coarta el derecho del acusado a obtener información relativa a su coartada. Esta exigencia simplemente obliga a la defensa a actuar con diligencia al solicitarle al Ministerio Público que le facilite dicha información en lugar de esperar que ésta aparezca. Ello resulta lógico puesto que el acusado, que notifica sobre su intención de servirse de la defensa de coartada, tiene que presumir que el Ministerio Público va a investigar cuán sólida es dicha defensa para refutarla en su día.

En el caso de marras, la defensa descansó en que el Ministerio Público le notificaría sobre su intención de presentar testigos de refutación, por lo que no le requirió dicha información afirmativamente. No obstante, el día an-

tes de presentar sus testigos de refutación, el Ministerio Público anunció que los traería al día siguiente. Véase Minuta de 27 de enero de 1993. Aun así, la defensa no solicitó una lista de testigos ni objetó a la presentación de éstos. A la luz de ello, procede concluir que el tribunal de instancia actuó correctamente al permitir dicha prueba de refutación de coartada. El error no fue cometido.

## III

En segundo lugar, el apelante alega que el tribunal de instancia cometió un error al permitir que el Ministerio Fiscal impugnara la credibilidad de los testigos de coartada mediante testimonio que demostraba una mera posibilidad de que los hechos hubieran ocurrido de otra manera. Su planteamiento carece de mérito.

■ En *Pueblo v. Tribunal Superior*, 101 D.P.R. 133, 138 (1973), dispusimos que "[l]a defensa de coartada consiste esencialmente en la alegación del hecho de que el acusado no se encontraba en el lugar del crimen en la fecha y hora que se supone se cometió". Véase, además, *Pueblo v. Millán Meléndez*, 110 D.P.R. 171 (1980). Dicha prueba no tiene que establecer más allá de duda razonable que era imposible que el acusado hubiese cometido el delito. Como expresamos en *Pueblo v. Moreau Pérez*, 96 D.P.R. 60, 64 (1968), "[s]ólo constituye prueba que tiende a establecer que el acusado no cometió el delito o a crear una duda en la mente del jurado con respecto a su culpabilidad".

■ Al evaluar dicha prueba, el Jurado puede adjudicarle el valor probatorio que estime adecuado aun cuando el Ministerio Público no traiga prueba de refutación. *Pueblo v. De Jesús Rivera*, 113 D.P.R. 817, 826 (1983); *Pueblo v. Acosta Acosta*, 107 D.P.R. 68, 71 (1978). Chiesa Aponte, *op. cit.*, pág. 313. Dado el hecho de que el Ministerio Fiscal no estaba en la obligación de presentar prueba alguna de

refutación de coartada, y que el juzgador de hechos le puede otorgar a la prueba de coartada el valor probatorio que estime adecuado, el mero hecho de que el fiscal presentara prueba tendente a establecer la posibilidad de que los sucesos podrían haber ocurrido de un modo distinto al planteado por la defensa no constituye un error.

## IV

Por último, el apelante nos indica que el Jurado cometió un error al encontrarlo culpable aun cuando una apreciación justa de la prueba no establecía su culpabilidad más allá de toda duda razonable. No le asiste la razón.

■ Reiteradamente hemos dispuesto que aunque la culpabilidad de un acusado tiene que ser probada más allá de duda razonable, "ello no significa que toda duda posible, especulativa o imaginaria, tenga que ser destruida a los fines de establecer la culpabilidad del acusado con certeza matemática. Sólo se exige que la prueba establezca aquella certeza moral que convence, dirige la inteligencia y satisface la razón". *Pueblo v. Pagán, Ortiz*, 130 D.P.R. 470, 480 (1992), citando a *Pueblo v. Bigio Pastrana*, 116 D.P.R. 748, 760–761 (1985).

■ Hemos dispuesto, además, que de ordinario, y en ausencia de error manifiesto, pasión, prejuicio o parcialidad en la apreciación de la prueba, las determinaciones del Jurado merecerán gran deferencia y no se intervendrá con ellas en apelación. *Pueblo v. Fradera Olmo*, 122 D.P.R. 67, 79 (1988); *Pueblo v. Márquez y Bermúdez*, 122 D.P.R. 93, 104–105 (1988); *Pueblo v. Rivera Robles*, 121 D.P.R. 858, 869 (1988). Ello es así puesto que "[e]l Jurado es el más indicado para otorgar credibilidad y dirimir conflictos de prueba. Son éstos quienes normalmente están en mejor condición de aquilatar la prueba, pues gozan de la oportu-

nidad de ver y escuchar directamente a los testigos". *Pueblo v. Ruiz Ramos*, 125 D.P.R. 365, 400–401 (1990), citando a *Pueblo v. Pellot Pérez*, 121 D.P.R. 791 (1988).

No cabe duda de que el Jurado en el caso de marras tuvo ante sí prueba suficiente para determinar la culpabilidad del apelante. No hay indicio alguno de que el veredicto del Jurado estuviera viciado de un error manifiesto, pasión, prejuicio o parcialidad, y el apelante no hace ningún planteamiento al respecto. Por lo tanto, el error no fue cometido.

Por los fundamentos que anteceden, *se confirma la sentencia recurrida.*

*Se dictará la sentencia correspondiente.*