# 96 DTA 80

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL IV DE MAYAGUEZ Y AGUADILLA

EL PUEBLO DE PUERTO RICO
Apelado

v.

EDISON AYALA CANCEL
Apelante

Núm. KLAN-95-00511

San Juan, Puerto Rico, a 8 de febrero de 1996

Panel integrado por su presidente, Juez Brau Ramírez
y los Jueces Colón Birriel y Delgado Hernández

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

El apelante Edison Ayala Cancel fue acusado ante el Tribunal de Primera Instancia, Sala Superior de Mayaguez, por infracción a los Arts. 3.1 y 3.3 de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley 54 de 15 de agosto de 1989, 8 L.P.R.A. secs. 601 y ss. (Supl. 1995), por maltrato y maltrato mediante amenaza, respectivamente, contra la persona de Bridget Burgos Burgos, con quien había sostenido una relación consensual. El 28 de abril de 1995, luego de un juicio por Tribunal de Derecho, fue hallado culpable, en reconsideración, de los delitos menores incluidos de agresión agravada menos grave y amenaza, 33 L.P.R.A. secs. 4032 y 4194, y sentenciado a cumplir consecutivamente dos términos de seis (6) meses bajo el régimen de libertad a prueba.

### II

Como testigos de cargo testificaron la perjudicada Bridget Burgos Burgos, el policía José M. Toro, Stephanie Pineda Burgos y el policía Norberto Ojeda.

La Sra. Bridget Burgos declaró que convivió con el apelante desde mayo de 1993 hasta agosto de 1994. Testificó que poco después de romper con el acusado, el día 27 de agosto de 1994, como de 12:00 a 1:00 p.m. iba en su auto marca Jeep hacia la casa del Sr. William Arroyo --donde estaba residiendo en esos momentos-- en el Barrio Duey Alto del Rosario, dentro del Municipio de San Germán. Se topó con el apelante quien le ordenó detenerse y se le acercó.

Para esa fecha, la perjudicada tenía necesidad de sacar sus pertenencias de la casa del apelante para lo cual tenía permiso. Según el testimonio de la perjudicada el apelante quería que ella sacara sus pertenencias cuando él dijera. Ella le indicó que pasaría al otro día a las 12:00 m. a recogerlas. Entonces él se alteró y le ordenó que apagará el Jeep, cosa que ella no hizo.

En ese momento, el apelante dio la vuelta al vehículo y entró al mismo. Empezó a halarle el pelo a la perjudicada y a darle puños y quería sacarla a la fuerza. La testigo *declaró que el apelante le dio en todas las partes del cuerpo y que ella tenía marcas en el brazo y seno derecho. Luego él tomó una lata que estaba en el piso y le dijo a la perjudicada que iba a romper la lata porque la iba a "espescuezar".* Ella arrancó el Jeep pero el apelante lo apagó. Indicó la testigo que habían tres (3) hombres en los alrededores quienes se fueron corriendo porque el apelante amenazaba a todo el mundo.

Finalmente, la testigo pudo arrancar el vehículo y llegar a la casa de William Arroyo y Migdalia González. Testificó que llegó alterada y con la camisa rota y que el apelante la siguió y quería sacarla a la fuerza de la casa. El dueño de la casa, William Arroyo, logró que el apelante se fuera. Entonces ella fue a la policía. El policía Toro atendió la querella.

Al día siguiente, 28 de agosto de 1994, se encontraba en la casa de Efraín Tirado cuando el acusado entró por la finca a la casa, la agarró por los brazos a la fuerza, le profirió palabras obscenas y le indicó que tenía que hablar con ella por lo que quería que ella saliera de la casa. Testificó que se aguantó de una de las puertas del cuarto y que el apelante la arrastró empujándola.

En la casa estaban presentes el Sr. Efraín Tirado, la Sra. Ramona Soto y el Sr. Reynaldo Tirado. El apelante le decía a la perjudicada que más valía que le retirara la denuncia porque la iba a matar. Luego indicó que a ella no, sino que mataría a sus hijas para que sufriera. En la discusión le haló el pelo.

La perjudicada testificó que estaba atemorizada pues sabía que el apelante portaba un revólver. La testigo se metió en el baño y le pidió a la Sra. Ramona Soto, madre de Reynaldo Tirado, que le abriera la puerta de atrás para salir corriendo y llamar a la policía, como en efecto hizo.

En el contrainterrogatorio, la perjudicada indicó que ella era la que aportaba económicamente al hogar donde convivió con el apelante. A preguntas de la defensa, reconoció que en la declaración jurada que había prestado respecto a los hechos del 27 de agosto de 1994, no indicó que cuando el apelante entró al Jeep le dijo que tenía que hablar con ella; ni que mientras el apelante le daba golpes, ella se agarraba del guía; ni que el apelante se bajó del Jeep cuando le dijo que fueran a hablar en el camino de los caballos y que ella le pidió que la soltara y dejara de darle golpes; tampoco que el apelante cogió una lata de soda y trató de romperla, diciéndole la perjudicada que no le hiciera nada que iba a hablar con él. En la declaración jurada la testigo también indicó que se salió del Jeep y en el juicio testificó que no se bajó pues entendía que el apelante podía hacerle algo.

Confrontada con estas omisiones indicó la testigo que estaba nerviosa cuando se tomó la declaración jurada y que ella dijo muchas cosas pero no sabía si ellos las habían escrito. De la declaración jurada sobre los hechos del 28 de agosto, no surge que el apelante le hubiera proferido palabras obscenas; que el apelante dijera que iba a matar a sus hijas y a ella; ni que la testigo hubiera tratado de aguantarse de una puerta para evitar que el apelante la sacara de la casa. En la declaración jurada indicó que el apelante la agarró fuertemente por los cachetes y por el pelo y que la sacó de la residencia. En el juicio testificó que el apelante la tomó por los brazos de manera violenta. La testigo indicó que esa declaración fue tomada un día después de los hechos y que estaba nerviosa por lo que se le olvidaron cosas.

La defensa presentó para identificación una carta de la testigo dirigida al apelante y unas fotos las cuales la testigo identificó y admitió haberle entregado la primera y enviado las últimas al apelante el 28 de agosto de 1994. En la carta la testigo manifestaba que si el apelante la veía con otro no pensara que no lo quería; que no fuera a pensar que ella estaba viviendo consensualmente con Reynaldo. La testigo declaró que para octubre de 1994, se unió consensualmente a Reynaldo, y que antes sólo vivía en casa de él.

Admitió que el 5 de octubre de 1994 presentó una denuncia contra el apelante porque éste la había perseguido hasta una tienda. El Juez determinó que no existía causa probable.

El policía José M. Toro Cruz, testigo del Fiscal, indicó que la perjudicada Bridget Burgos se personó al cuartel del Poblado el Rosario como a las 3:00 p.m. del día 27 de agosto de 1994 y le indicó que como a la 1:30 p.m. el apelante la había agredido y halado por el pelo. Le mostró un hematoma que tenía en el brazo derecho.

En el contrainterrogatorio, indicó que todo lo que declaró era por información y creencia pues no le constaba de propio y personal conocimiento.

La tercera testigo de cargo fue Stephanie Pineda Burgos, hija de la perjudicada, quien tiene 11 años de edad. Sobre los hechos del 27 de agosto indicó que estaba en la casa de William Arroyo cuando su mamá llegó llorando. El apelante quería sacarla a la fuerza pero el Sr. Arroyo se lo impidió. El apelante le dijo al Sr. Arroyo en tono de voz alto que si no dejaba salir a la apelante le iba a hacer algo a ella.

En cuanto a los hechos del 28 de agosto testificó que su mamá llegó como a las 8:00 p.m. a la casa de Efraín Tirado. El apelante llegó y quería sacar a su mamá de la casa y le indicó que la iba a matar a ella y a sus hijas.

En el contrainterrogatorio, indicó la testigo que su mamá y el Sr. Reynaldo Tirado eran novios; su mamá estaba en la finca recogiendo café con Reynaldo y luego llegó a la casa en su Jeep.

En cuanto al incidente de agosto 28, declaró que desde donde ella estaba escondida podía ver a la perjudicada y al apelante, y que lo podía escuchar pues hablaba en voz alta. El apelante le decía que *"tumbara"* la denuncia y la agarró por la cara y le haló el pelo. Cuando él le dijo a su mamá que la iba a matar, ésta salió para el baño. El apelante no pudo seguir a la perjudicada pues la Sra. Ramona Soto y el Sr. Efraín Tirado no lo dejaron pasar.

El cuarto testigo de cargo fue el policía Norberto Ojeda quien declaró que el 28 de agosto de 1994, la Sra. Bridget Burgos llegó al Cuartel de San Germán a las 10:30 p.m. Ella alegó que el apelante la había amenazado, que él se había personado a la casa de William Tirado donde ella se encontraba, la sacó por el pelo de la residencia y la agredió. Declaró que la Sra. Burgos le dijo que el apelante la amenazó de que algo le ocurriría a ella o a sus hijas si no le tumbaba la denuncia.

El testigo no estuvo en el lugar de los hechos. Cuando entrevistó al apelante a solas, éste lucía normal y negó todos los hechos.

La defensa presentó como única testigo a la Sra. Ramona Soto Martínez. Testificó que el 28 de agosto de 1994, estando en su casa llegó el apelante y llamó a Bridget Burgos. Dentro de su casa no pasó nada. Luego de llamarla el apelante cogió a la perjudicada por el brazo y ambos salieron afuera.

En el contrainterrogatorio, indicó que el apelante no sacó a la perjudicada de mala manera. Esta última le pidió a la testigo que le abriera la puerta del baño, como en efecto hizo, pero indicó que no sabía para qué.

Concluida la presentación de la prueba y sometido el caso, el Tribunal de Instancia declaró al apelante culpable de los cargos imputados. Posteriormente, en respuesta a una solicitud de reconsideración presentada por la defensa, el Tribunal reconsideró su fallo y declaró al acusado culpable por el delito de agresión agravada menos grave y amenaza, sentenciando al acusado a seis (6)

meses en cada caso a ser cumplidas de manera consecutiva mediante el régimen de libertad a prueba.

Inconforme con esta determinación, el apelante recurrió a este Tribunal.

## III

En su escrito, alega el apelante que erró el Tribunal de Primera Instancia al declararlo culpable en virtud de una prueba de cargo increíble, contradictoria e insuficiente en derecho para establecer su culpabilidad más allá de duda razonable, y al imponerle el cumplimiento de las sentencias de forma consecutiva.

Es norma reiterada en nuestra jurisdicción que un tribunal apelativo no intervendrá con la apreciación de la prueba realizada por el Tribunal de Instancia en ausencia de prejuicio, parcialidad o error manifiesto. Véanse, *Pueblo v. Meléndez Rodríguez,* ___ D.P.R. ___ (1994), **94 J.T.S. 104,** a la pág. 14; *Pueblo v. Cabán Torres,* 117 D.P.R. 645, 654 (1986); *Pueblo v. Millán Meléndez,* 110 D.P.R. 171, 181 (1980); *Pueblo v. López Pérez,* 106 D.P.R. 584, 587 (1977); *Pueblo v. Alvarez,* 105 D.P.R. 474, 478 (1976); *Pueblo v. Cruz Negrón,* 104 D.P.R. 881, 882 (1976).

En el caso de autos, el apelante no ha demostrado la existencia de alguno de estos elementos en la apreciación de la prueba realizada por el Juez de Instancia. El Tribunal concedió crédito a la declaración de la perjudicada Sra. Bridget Burgos, a pesar de haber incurrido ésta en algunas contradicciones y omisiones. Coincidimos con el ilustrado foro de Instancia en que las contradicciones en cuestión no requerían que, como cuestión de derecho, se descartara dicho testimonio. La declaración de la perjudicada, a nuestro juicio, resulta suficiente para establecer que el apelante efectivamente la agredió y la amenazó. Véase la Regla 10(D) de las de Evidencia, 32 L.P.R.A, Ap. IV, R. 10 (D).

Aun concediendo peso a las contradicciones imputadas por el apelante, correspondía más bien al Juez de Instancia adjudicar el valor de su testimonio, particularmente en cuanto a aquellas áreas no afectadas por las contradicciones. Véanse, *Pueblo v. Cabán Torres,* 117 D.P.R. a las pág. 656-657; *Pueblo v. Cruz Negrón,* 104 D.P.R. 881, 883 (1976).

La declaración de la perjudicada no produce insatisfacción en nuestro ánimo que amerite sustituir la apreciación de dicha prueba por el foro de Instancia, quien estaba en una posición superior a la de este Tribunal para evaluar la credibilidad de esta testigo. En estas circunstancias, debemos concluir que el error no se cometió.

En cuanto al señalamiento de error dirigido a cuestionar la imposición de las sentencias de manera consecutiva, cabe señalar que tal determinación descansa en la sana discreción del Juez sentenciador. Véanse, *Pueblo v. González,* 97 D.P.R. 541, 544 (1969); *Pueblo v. Matos Pretto,* 93 D.P.R. 113, 132 (1966).

Nada hallamos en el récord del presente caso que sugiera que el Juez sentenciador abusó de su discreción al imponer al apelante las sentencias de forma consecutiva. Observamos que dicho Magistrado benefició al apelante al modificar, en la etapa de reconsideración, su dictamen original para emitir un fallo por delitos menores a los imputados y al concederle al apelante los beneficios de una sentencia suspendida.

Por los fundamentos expresados, se confirma la sentencia apelada.

Lo pronunció el Tribunal y lo certifica la señora Secretaria General.

María de la C. González Cruz
Secretaria General