Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| MELISA MEDERO MALDONADO<br><br>Querellante-Recurrida<br><br>Vs.<br><br>EXECUTIVE CONSULTING AND REAL ESTATE; HOME MORTGAGE CORP.<br><br>Querellado-Recurrente | KLRA202400673 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm. SAN-2023-0014289<br><br>Sobre: BIENES RAÍCES (LEY NÚM. 10 DE 26 DE ABRIL DE 1994, SEGÚN ENMENDADA) |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de febrero de 2025.

Comparece la parte recurrente, Home Mortgage Corp., y solicita la revocación de una resolución emitida por el Departamento de Asuntos del Consumidor ("DACo"). Por medio del dictamen recurrido, la agencia ordenó a la parte recurrente a completar ciertas tareas de reparación en la vivienda de la parte recurrida, la señora Melissa Medero Maldonado.

Por los fundamentos expuestos en esta sentencia, *modificamos* la resolución recurrida, y así modificada, *confirmamos* el resto.

*-I-*

El 11 de mayo de 2023, la parte recurrida presentó una querella en contra de la parte recurrente y la co-querellada, Executive Consulting and Real Estate. Reclamó el cumplimiento de un contrato entre ella y la parte recurrente. Alegó el incumplimiento de la parte recurrente con su obligación de reparar

la vivienda que adquirió. El 24 de agosto de 2023, un inspector del DACo visitó la vivienda para corroborar los daños reclamados por la parte recurrida. La parte recurrida compareció a la inspección, pero la parte recurrente no estuvo presente durante la inspección.

El 25 de agosto de 2023 fue notificado el informe de inspección a todas las partes. Los resultados de la inspección fueron los siguientes:

- De la visita realizada se desprende que, desde marzo de 2022, la querellante adquirió mediante escritura individual de compraventa de propiedad en referencia, que, luego de poder entrar a la residencia y mientras se percatan de unos defectos de estructura, comienza a descubrir trabajo a realizar, dentro y fuera de la residencia tales como:
  - Cambio de losas inconclusas en el interior, primer piso, sala, comedor, cocina.
  - Gabinetes de cocina con visible deterioro físico, en relativamente todo el mueble, fuera de servicio.
  - Lavamanos del primer nivel fuera de servicio.
  - Puerta de vidrio corrediza con carriles y cierre central, fuera de servicio.
  - Portón patio hacia la calle con visible daño en la cerradura que atenta a la seguridad de los residentes que requiere de reparación inmediata.
  - Al subir, segundo nivel, escalera lucen [sic] una estructura inconclusa, que requieren de un mantenimiento, para un acabado y terminados ideal.
  - De igual forma puertas de cuarto, closet, baño con machas visiblemente con deterioro y rasgos marcada de plaga (comején).
  - Aparte de manchas por filtraciones en techo y paredes de cuarto, losas desniveladas, una más alta que la otra.
  - Operadores de ventana fuera de servicio.
  - Receptáculos en paredes sin protección, expuestos.
  - De igual forma, en el exterior calentador de agua tipo cilindro, sin instalar, en un área de la marquesina sin puertas de closet, sin una base de anclaje, de protección, visiblemente expuesto libre al público.

El informe notificado también incluye la opinión pericial del inspector del DACo:

Muchas deficiencias deben de ser corregidas ya que hubo un intento de algunos arreglos dentro de la residencia, de parte de los querellados, quedando

incluso y [pagadas] en su totalidad. Muchas preocupaciones del querellante que requiere de un mantenimiento, reparación agresivo y modificaciones, en verja y portón patio, puerta corrediza, que requieren de agilidad, para rehabilitar, áreas vulnerables para fumigación, y prevenir el problema de comején, entre otros en el interior de la propiedad. Monturas de puertas en las habitaciones y closet. Rehabilitar baños cuarto master. Remoción de gabinetes inhabitables [sic] de concina incluye tope, para recalcular, evaluar la instalación de un mueble de concina, funcional, firme para uso y disfrute diario. Instalación de losas en áreas selectivas, sellado de techo, reparación de ventanas, baños pasillo primer nivel, receptáculos expuestos, con sus tapas y terminaciones. Instalación de calentador, expuesto, recogido de escombros, lo que resulta en incumplimiento con los acuerdos de contrato en una propiedad que se entregó inconclusa, inhabitable, con deterioros y un potencial de otros problemas. Que el costo de reparación en todas las aras ha sido inesperado, sin previa orientación.

Sin embargo, se ofrece un estimado de reparación en caso de que los querellados no cumplan con su responsabilidad, ante una venta inconclusa, acortando la vida útil de la propiedad donde se ha limitado al uso y disfrute de la misma.

El estimado total para la reparación y pago de mano de obra ascendió a $20,800. El informe pericial no fue cuestionado por la parte recurrente, o la parte co-querellada.

La agencia citó a las partes a una vista administrativa para el 17 de enero de 2024. La parte recurrente no compareció, tampoco presentó excusa por su incomparecencia ante el DACo. La parte co-querellada compareció, también la parte recurrida, por derecho propio, y su hermano en calidad de testigo. Desfilada la prueba y concluida la vista, el DACo notificó la resolución recurrida en la cual determinó como cuestión de hecho:

1. La parte querellante se identifica como Melissa Medero Maldonado (en adelante la parte querellante) mayor de edad, y residente del municipio de San Juan, Puerto Rico. Su dirección postal es: Parcelas Falú Calle 43 #272, San Juan, Puerto Rico 00924.

2. La parte coquerellada se identifica como Executive Consulting and Real Estate (en adelante Executive o parte coquerellada), es una corporación doméstica con fines de lucro, autorizada a realizar negocios en Puerto Rico. Su dirección postal de

récord es la siguiente: PO Box 1704, Trujillo Alto, Puerto Rico 00977.

3. La parte coquerellada se identifica como Home Mortgage Corp. (en adelante Home Mortgage o parte coquerellada), es una corporación doméstica con fines de lucro, autorizada a realizar negocios en Puerto Rico. Su dirección postal de récord es la siguiente: Ave. Sánchez Osorio, 3B S-5 Vía 60 Villa Fontana, Puerto Rico 00983.

4. Comenzada la vista administrativa se admitió como evidencia y se marcó como Exhibits la siguiente prueba documental:

    i. Carta de Precalificación Exhibit #1.

    ii. Cheque de Opción. Exhibit #2.

    iii. Contrato de compraventa y Addendums. Exhibit #3.

    iv. Estimado de reparaciones. Exhibit # 4.

    v. Escritura de compraventa. Exhibit # 5.

    vi. Estimado de techo. Exhibit #6.

    vii. Estimado de exterminación de comején. Exhibit #7.

5. La coquerellada Home Mortgage envió una carta a la parte querellante el día 17 de enero de 2023, precalificándola por la cantidad de $150,000.00 para el financiamiento de la compraventa de una vivienda.

6. Para el mes de marzo de 2023 la parte querellante otorgó una escritura de compraventa para adquirir una propiedad localizada en la Urbanización Villa Capri Court, Calle Verona A-7, sita en el municipio de San Juan.

7. Como parte del proceso de compraventa, la coquerellada Executive mostró la casa a la querellante antes de otorgar la escritura de compraventa. El precio original de venta anunciado por la propiedad fue de $159,000.00. La parte querellante realizó una oferta de $150,000.00 la cual fue aceptada por los vendedores.

8. Como parte del contrato de compraventa, la coquerellada entregó un cheque por la cantidad de $3,000.00 en calidad de depósito de opción de para la compra de la propiedad.

9. Como parte del contrato de compraventa y cierre hipotecario, un tasador provisto por la coquerellada Home Mortgage realizó una inspección de la propiedad y produjo un estimado de las reparaciones que debían ser realizadas. El tasador estimó en $10,000.00 la cantidad asignada para realizar las reparaciones de rigor.

10. Las partes acordaron la realización de las mejoras estimadas por el tasador como parte del acuerdo de compraventa y cierre hipotecario. Dichas mejoras no fueron completadas por la parte

querellada. La realización de las mejoras es una condición esencial del contrato entre las partes.

11. Acto seguido al otorgamiento de la escritura de compraventa, la parte querellante se persona a la propiedad. Ahí se percata de filtraciones de techo en el área de tragaluz y área de la escalera. También la alfombra, que debió ser removida, sufrió daños. Ambas tareas estaban incluidas en el estimado de mejoras paro la coquerellada Home Mortgage no las completó de manera adecuada.

12. Durante esa primera visita de la querellante a su residencia, se identificó en el área de la cocina en el primer nivel que las losas no estaban instaladas completas. Además, se identificó comején en área de gabinetes. Ambas tareas estaban incluidas en el estimado de mejoras, pero la coquerellada Home Mortgage no las completó de manera adecuada.

13. El contratista a cargo de la realización de las mejoras fue recomendado y tramitado por la coquerellada Home Mortgage. Dicho contratista realizó las tareas de manera parcial y no completó las mismas.

14. Debido al incumplimiento parcial del coquerellado Home Mortgage, la parte querellante no ha podido residir o habitar la propiedad.

15. La condición actual de la residencia debido a los incumplimientos del coquerellado Home Mortgage mantienen a la parte querellante en un estado de indefensión y representan un riesgo a la salud y seguridad.

16. El estimado de reparaciones realizado por el tasador incluida lo siguiente:

| | |
|---|---|
| Electrical certification | $350.00 |
| Pluming Certification | $300.00 |
| Take Out and replace all living and dining tiles | $4,450.00 |
| Take out carpet from the stairs and rebuild in wood the stairs | $600.00 |
| Take out wall paper, treatment at the walls and paint all inside the house | $4,000.00 |
| Replace the receptacles at kitchen and light fixtures in the areas that need it | $300.00 |

17. Las tareas "electrical certitication" y "plumbing certification" debieron ser costeadas a expensas de la parte querellante.

18. Las tareas "take out and replace all living and dining tiles", "Take out carpet from the stairs and rebuild in wood the stairs", "Take out wall paper, treatment at the walls and paint all inside the house" y "Replace the receptacles at kitchen and light fixtures in the areas that need it" fueron realizadas de manera parcial por la coquerellada Home Mortgage.

19. Realizar las tareas requeridas para reparar las filtraciones del techo, limpieza y sellado del mismo tienen un valor de $850.00.

20. Realizar las tareas requeridas para eliminar y corregir la condición de comején en la propiedad tienen un valor de $1,200.00.

21. La parte querellante se mantiene pagando las mensualidades de su préstamo hipotecario a la institución financiera que otorgó el financiamiento para adquirir la propiedad.

22. La parte querellante ha sido diligente en el cumplimiento de sus obligaciones bajo el acuerdo contraído entre las partes.

23. El cheque pagado en calidad de depósito fue girado a nombre de Executive Consulting and Real Estate. Dicho cheque fue por la cantidad de $3,000.00.

24. La representante de Executive Lizmar Correa Correa es corredera de bienes raíces en cumplimiento con la Ley Núm. 10. Sus acciones en la presente querella no constituyen violación alguna a la Ley Núm. 10.

25. El presente caso se realizó inspección en la propiedad objeto de la controversia por un Técnico de Investigación del DACO (inspector) el día 7 de agosto de 2023. Como resultado de dicha inspección se produjo un Informe de Inspección.

26. Como parte de la opinión pericial emitida en el informe, el inspector del DACO (en adelante, el inspector) concluyó que "muchas deficiencias deben ser corregidas ya que hubo un intento de algunos arreglos dentro de la residencia, de parte de los querellados, quedando inconcluso y pagas en su totalidad. Muchas preocupaciones del querellante que requiere de un mantenimiento, reparación, agresivo y modificaciones, en verja y portón patio, puerta corrediza, que requieren de agilidad, para rehabilitar, áreas vulnerables para fumigación y prevenir el problema del comején, entre otros en el interior de la propiedad".

27. El inspector añadió en su informe lo siguiente: "Remoción de gabinetes inhabitables de cocina incluye tope, para recalcular, evaluar la instalación de un mueble de cocina, funcional, firme para uso y disfrute diario. Instalación de losas en áreas selectivas, sellado de techo. Reparación de ventanas, baños, pasillo primer nivel[,] receptáculos expuesto[s], con sus tapas y terminaciones".

28. El informe de inspección emitido no fue impugnado por ninguna de las partes por lo que pasó a ser estipulado y su contenido es parte integral del expediente administrativo.

29. La parte querellante no presentó como apoyo a sus alegaciones ninguna prueba adicional ni testifical ni documental.

El foro recurrido concluyó como, cuestión de derecho, que, la parte recurrente debe responder por las mejoras no realizadas debido a que, la parte recurrente quedó obligado "como parte del proceso de compraventa, [a] la realización de las mejoras a la

propiedad para finiquitar la transacción", y atribuyó negligencia a la parte recurrente "al no asegurarse que dichas tareas fueron completadas conforme a los acuerdos suscritos". En consecuencia, concedió a la parte recurrente 30 días para: (1) remover el comején de la propiedad; (2) instalar las losas en el área de la cocina; (3) completar el trabajo de reparación de sellado de techo. La agencia también ordenó el pago de $5,000 a favor de la parte querellada, en caso de no completar las tareas en el plazo concedido. Finalmente, desestimó la querella en cuanto a la parte co-querellada por no existir causa de acción en contra de la empresa.

La parte recurrente solicitó reconsideración, pero fue denegada. Todavía inconforme comparece ante el Tribunal de Apelaciones y señala los siguientes errores:

> Erró el DACO al no haber determinaciones de hechos que vinculen a Home con la querellante y, como cuestión de derecho, imponerle la obligación y responsabilidad de reparar los vicios de construcción señalados.
>
> Erró el DACO al ignorar el relevo de responsabilidad otorgado por la querellante, el cual exime y releva a Home de la responsabilidad incorrectamente imputada por el DACO.
>
> Erró el DACO al ordenar a HOME realizar reparaciones por los vicios de construcción, dado que, incluso aceptando por argumentos que fuese correcto imputarle responsabilidad a Home, la Ley solo permite un remedio monetario.
>
> Erró el DACO al asumir jurisdicción para entender en una materia o asunto y adjudicar responsabilidad a Home sin facultad en Ley para ello.

La parte recurrida no compareció mediante alegato escrito dentro del plazo reglamentario. Por tanto, resolvemos sin el beneficio de su comparecencia.

-II-

-A-

Es norma firmemente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las

decisiones de los organismos administrativos. Ello, dado que, las agencias administrativas cuentan con vasta experiencia y conocimiento especializado en cuanto a los asuntos que les han sido encomendados. *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021); *OCS v. Universal*, 187 DPR 164, 178 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla. *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012). Así, en cuanto a las determinaciones de hecho que realiza una agencia, el Tribunal Supremo ha resuelto que los tribunales revisores tienen que sostenerlas si se encuentran respaldadas por evidencia suficiente que surja del expediente administrativo al ser considerado en su totalidad. *Pacheco v. Estancias*, 160 DPR 409, 432 (2003). Véase, además, Sec. 4.5 de la LPAU, 3 LPRA § 9675. Por evidencia sustancial se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Rolón Martínez v. Superintendente*, 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Otero v. Toyota*, 163 DPR 716, 728-729 (2005).

Por lo tanto, la parte afectada deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial. *Otero v. Toyota*, supra, pág. 728. En fin, el tribunal debe limitar su intervención a evaluar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo. *Íd.*

Por otro lado, respecto a las conclusiones de derecho, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos. Sec. 4.5 de la LPAU, 3 LPRA § 9675. Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia". *Otero v. Toyota*, supra, pág. 729. Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.* Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa". *Íd.*

Por consiguiente, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

### -B-

Nuestro Tribunal Supremo ha reconocido que el juzgador de los hechos en primera instancia está en especial ventaja al hacer

determinaciones de hechos y aquilatar la prueba testifical y las adjudicaciones de credibilidad. *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020); *Pueblo v. De Jesús Mercado*, 188 DPR 467, 477-478 (2013); *Pueblo v. Rosario Reyes*, 138 DPR 591, 598 (1995). "[C]omo norma general, los tribunales apelativos no intervenimos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza ese foro". *Pueblo v. Rivera Maldonado, supra*, pág. 373. "Los tribunales revisores podremos sustituir el criterio que utilizó el foro primario por el nuestro únicamente cuando existen circunstancias extraordinarias en las que se pruebe que el foro primario actuó con pasión, prejuicio o parcialidad, incurrió en craso abuso de discreción o en error manifiesto o de derecho". *Íd.*

Un tribunal actúa con pasión, prejuicio o parcialidad cuando está "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013).

Para determinar si un tribunal incurrió en craso abuso de discreción, se deben considerar los siguientes criterios:

> [E]l juez no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (2) el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en él, o (3) a pesar de tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez sopesa y los calibra livianamente.

> *Pueblo v. Custodio Colón*, 192 DPR 567, 589 (2015).

"Por último, un juzgador incurre en error manifiesto que justifica la intervención del tribunal apelativo cuando 'la apreciación de [la] prueba se distancia de la realidad fáctica o es

inherentemente imposible o increíble'". *Pueblo v. Rivera Maldonado*, *supra*, pág. 374; *Pueblo v. Irizarry*, 156 DPR 780, 816 (2002).

### -C-

La obligación "consiste en el deber de realizar una prestación. Esta es la conducta que ha de seguir el obligado para extinguir la obligación mediante el correspondiente acto de cumplimiento". J. Puig Brutau, *Compendio de derecho civil*, 2ª ed. rev., Barcelona, Ed. Bosch, 1994, Vol. II, pág. 1. Un contrato es el negocio jurídico entre dos o más personas donde las partes contratantes se obligan a dar, hacer o no hacer una cosa.

Cuando una parte no cumple lo pactado, incurre en incumplimiento contractual. "[L]a responsabilidad contractual se basa 'en el quebrantamiento de un deber que surge de un contrato expreso o implícito'. A través de las acciones *ex contractu* se vindican los daños acaecidos como consecuencia del incumplimiento de obligaciones previamente pactadas". *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38, 56 (2015).

### -III-

La parte recurrente asevera que el DACo carece de facultad en ley para dirimir la querella presentada y conceder un remedio apropiado.

Sin embargo, la Ley Núm. 5 del 23 de abril de 1973, según enmendada, conocida como *Ley Orgánica del Departamento de Asuntos del Consumidor*, 3 LPRA § 341, *et seq.*, delegó en el DACo la responsabilidad de vindicar e implementar los derechos del consumidor. Para ello, "se estableció en la agencia una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a derecho". *Ortiz Rolón v. Soler Auto Sales, Inc., et al.,* 202 DPR 689, 696 (2019); 3 LPRA § 341e(d). En

ese sentido, las determinaciones del DACo relacionadas con reclamos de consumidores deben ser cónsonas con el Código Civil. Véase, *Polanco v. Cacique Motors*, 165 DPR 156 (2005); *Domínguez Talavera v. Caguas Expressway Motors*, 148 DPR 387 (1999).

Por ello, conforme a la ley orgánica del DACo, y la jurisprudencia local, el DACo puede, al igual que los tribunales, conceder remedios civiles apropiados en armonía con el Código Civil. El único requisito es que, la parte querellante sea un consumidor y conceder el remedio conforme a derecho. Ambos preceptos quedaron cumplidos en la querella del epígrafe. La parte recurrida es una compradora, y solicitó un remedio en derecho por un alegado incumplimiento de un acuerdo con la parte recurrente.

Ahora bien, la parte recurrente postula que: "la Resolución recurrida no sostiene sus conclusiones de derecho sobre sus mismas determinaciones de hechos". Esto, al no existir "hechos que imputen relación u obligación contractual de Home, en su capacidad de entidad que provee financiamiento". Empero, conforme a las determinaciones de hechos número 9 y 10, una condición esencial del acuerdo entre las partes, y "[c]omo parte del contrato de compraventa **y cierre hipotecario**", fue la realización de las reparaciones identificadas por el tasador enviado por la parte recurrente.

El estimado realizado por el tasador de la parte recurrente (*Exhibit* #4) muestra un costo total de $10,000 para las reparaciones identificadas por el tasador en el documento. La parte recurrente no completó las reparaciones referidas en el *Exhibit* #4, esto conforme las determinaciones de hechos número 10, 11, 12 y 13.

Añada el contenido del informe pericial preparado por el inspector del DACo que, también confirma el incumplimiento de la parte recurrente con los trabajos identificados en el *Exhibit* #4. El

informe pericial también detalló, y actualizó, el estimado para la realización de los trabajos de reparación a los cuales quedó obligada la parte recurrente. El total "[p]or concepto de reparaciones improvista, requeridas del inmueble por venta, incancluso, sin previa aviso, materiales y mano de obra, desde...", es $16,055.52 a los cuales el inspector del DACo sumó $1,208.48 en concepto de impuesto sobre la venta y uso, sumó $2,080 para imprevistos, y $1,456 para los seguros. Estas partidas suman $20,800.

Podemos colegir de las determinaciones de hechos en la resolución recurrida, fundamentadas en el testimonio de la parte recurrida, que, era necesario completar las reparaciones identificadas por la parte recurrente para habilitar el uso de la estructura como vivienda. El expediente administrativo muestra que, la parte recurrente quedó obligada por sus propias acciones a reparar las tareas identificadas por el inspector del DACo.

En cuanto a estos puntos, correspondía al recurrente demostrar irracionalidad en la decisión del DACo, esto es que, no está justificada por una evaluación del peso de la prueba que tuvo a su consideración. *Domínguez v. Caguas Expressway Motors,* Inc., 148 DPR 387, 397–398 (1999). La norma establece la forma de lograr tal cometido, mediante el señalamiento de otra prueba en el récord que, razonablemente menoscabe el peso de tal evidencia hasta el punto de demostrar irracionalidad o arbitrariedad. *Íd.* Pero el recurrente solo argumentó sobre la base de afirmaciones, y no señaló otra evidencia sustancial en el expediente que nos permita intervenir con la atribución de responsabilidad sobre la obligación acordada entre las partes, y la subsiguiente negligencia demostrada por el recurrente al no completar las reparaciones.

El expediente administrativo constituye la base exclusiva para la decisión de la agencia en un procedimiento adjudicativo,

así como *para la revisión judicial ulterior.* Sec. 3.18 de la LPAU, 3 LPRA sec. 9658; *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 894 (2008). Este alberga, entre otros particulares, la evidencia recibida o considerada por la agencia, así como los ofrecimientos de prueba y las objeciones a estos. Sec. 3.18 de la LPAU, *supra.*

Considerado lo anterior, solo podemos coincidir con el DACo al atribuir responsabilidad a la parte recurrente por su incumplimiento contractual.

En lo concerniente a las determinaciones de hechos dictaminadas por el DACo, el ámbito de la revisión judicial se enmarca en auscultar si quedan sostenidas en evidencia sustancial considerando la totalidad del expediente administrativo. Sec. 4.5 de la LPAU. *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117, 127 (2019). A tono con lo anterior, el concepto *evidencia sustancial* es aquella "prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Graciani Rodríguez v. Garage Isla Verde, LLC, supra*, págs. 127–128.

El informe pericial estipulado por el DACo identificó detalladamente las reparaciones, y ofreció un estimado "en caso de que los querellados no cumplan con su responsabilidad". En el inicio, los querellados eran la parte recurrente y la compañía de bienes raíces, pero como vimos, la querella fue desestimada en cuanto a esta última. Ahora bien, como cuestión de derecho el DACo concluyó que la parte recurrente "sí debe responder ante la querellante por las mejoras no realizadas", y añade que "[d]e un examen de la prueba que obra en el expediente administrativo, surge claramente que Home Mortgage fue quien requirió, como parte del proceso de compraventa la realización de mejoras a la propiedad para finiquitar la transacción". Esto es, en aras de proveer el financiamiento para la transacción de compraventa e

hipoteca, la parte recurrente quedó obligada a completar estas reparaciones a su costo, pero incumplió.

Sin embargo, contrario a la prueba estipulada, el DACo solo requirió a la parte recurrente: (1) remover el comején de toda la propiedad; (2) completar la instalación de losas en el área de la cocina; y (3) completar el sellado de techo. Remedio fundamentado sobre los estimados provistos por la parte recurrida durante la vista administrativa (*Exhibits* #6 y 7). Para cumplir con estas tres tareas el DACo concedió a la recurrente 30 días, que expirados contemplarían el pago de $5,000 de parte de la parte recurrente a la recurrida en caso de un nuevo incumplimiento.

La presunción de corrección y regularidad en las actuaciones del DACo ceden en ciertas instancias apropiadas, y meritorias, a saber: (1) cuando la determinación administrativa no está basada en evidencia sustancial; (2) cuando la agencia erró al aplicar o interpretar las leyes o reglamentos que administra; (3) cuando la agencia realiza determinaciones carentes de base racional, por lo que actúa de forma arbitraria, irrazonable o ilegal, o (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. *Empresas Ferrer v. ARPe*, 172 DPR 254, 264 (2007).

En particular, en este caso, después de examinar minuciosamente el expediente administrativo, las piezas de evidencia admitidas, y sobre todo la evidencia pericial estipulada, nos obliga a modificar el remedio concedido por el DACo, pues no está fundamentado en el expediente administrativo. No encontramos alguna determinación de hecho sobre el estado actual de los desperfectos en la vivienda que disminuya el valor del estimado provisto en el informe pericial. Agregue que, el inspector del DACo detalló las reparaciones necesarias y actualizó el estimado para completar tales reparaciones. El informe fue

estipulado por el DACo y sirvió de fundamento para las determinaciones de hechos y conclusiones de derecho en la resolución recurrida. Sin embargo, el remedio provisto no refleja el contenido de la evidencia estipulada.

En vista de estas consideraciones, estamos obligados a modificar el remedio provisto.

*-IV-*

Por los fundamentos antes expuestos, que hacemos formar parte de este dictamen, *modificamos* la resolución recurrida a los efectos de ordenar a la parte recurrente a completar los trabajos señalados en el informe pericial de la agencia dentro de un término de 30 días de haberse notificado esta sentencia.

En caso de no completar los trabajos señalados en el informe pericial dentro del plazo señalado, la parte recurrente deberá pagar a la recurrida la cantidad de $20,800.

*Devolvemos* el caso a la agencia recurrida para la continuación de los procedimientos de forma compatible con esta sentencia. Así modificada, *confirmamos* el resto de la Resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones